**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ) | |
| JOHN WALSH, ) | |
| ) | |
| Plaintiff/Relator, ) | |
| ) | |
| v. ) | Case No.: 19-01027-CV-W-RK |
| ) | |
| ENTERPRISE HOLDINGS, INC., ) | *FILED UNDER SEAL* |
| ) | |
| and ) | *JURY TRIAL DEMANDED* |
| ) | |
| EAN HOLDINGS, LLC, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

The United States of America ex rel. John Walsh brings this *qui tam* action against

Defendants Enterprise Holdings, Inc. and EAN Holdings, LLC. The Complaint alleges that EAN

submitted false claims for payment to the United States, and as a result of those false claims, the

United States paid substantially more in payments to EAN than it should have.

### Introduction

1.      This is a *qui tam* action brought by Relator John Walsh under the False Claims Act

("FCA"), 31 U.S.C. §§ 3729-33, and common law theories of breach of contract, payment by

mistake, and unjust enrichment.

2.      The Complaint alleges that false and inflated claims for payment were submitted

by EAN to the General Services Administration[1] ("GSA") in violation of the FCA. The claims

---

[1]      GSA is an agency of the United States Government. "GSA provides workplaces by constructing, managing, and preserving government buildings and by leasing and managing commercial real estate." GSA, *General Services Administration*, https://www.gsa.gov/about-us (last visited December 14, 2019). GSA also provides "private sector professional services, equipment, supplies, and IT to government organizations and the military."

were submitted as a result of a contract between GSA and EAN for GSA's use of EAN's rental vehicles. The contract is identified as Contract GS-33F-0015S (hereinafter "the Contract").

3. As discussed in detail herein, EAN submitted false and inflated claims for payment to GSA for renting EAN vehicles. EAN's actions in creating, submitting, and facilitating false claims include, but are not limited to, the following actions:

- EAN violated the Contract because EAN knowingly failed to provide current, accurate, and complete pricing information to GSA throughout the duration of the Contract.

- EAN knowingly charged other entities a lower price, or offered greater discounts, for vehicle rentals than offered to GSA, in violation of the Contract and the Price Reductions clause.

- EAN made false reports of its compliance with the Contract. The Commercial Sales Practices ("CSP") statements that were submitted to GSA for the purpose of price comparison identified only one entity that received more favorable pricing than GSA. These reports were false because they did not disclose the other, non-federal agencies that received lower prices for vehicle rentals when compared with prices that GSA paid.

4. As a result of EAN's false statements and claims, EAN knowingly submitted and caused to be submitted false claims for payment to GSA and the United States.

**Parties**

5. Plaintiff in this action is the United States of America ex rel. the Relator.

2

6.     The Relator in this action is John Walsh. Relator is a former auditor with the United States Office of Inspector General. Prior to his retirement on December 31, 2018, Relator's title was Regional Inspector General for Auditing.

7.     Relator has direct and independent knowledge of the facts related to the facts and allegations as set forth in this Complaint.

8.     Defendant EAN Holdings, LLC is in the business of selling, leasing, and renting vehicles for commercial and personal use. EAN Holdings, LLC maintains its principal place of business located at 600 Corporate Park Drive; St. Louis, Missouri 63105. EAN's registered agent can be served at CT Corporation System; 120 South Central Ave.; St. Louis, Missouri 63105.

9.     EAN is a subsidiary of Enterprise Holdings, Inc., which owns and operates rental vehicles at 6,200 domestic locations. Enterprise Holdings, Inc.'s principal place of business is located at 600 Corporate Park Drive; St. Louis, Missouri 63105. It may be served via its registered agent located at CT Corporation System; 120 South Central Avenue; St. Louis, Missouri 63105.

10.    As used herein, the term "EAN" refers collectively to Enterprise Holdings, Inc. and EAN Holdings, LLC.

11.    During all relevant time periods, Defendants have been doing business in this District and throughout the United States.

## Jurisdiction and Venue

12.    The acts giving rise to this cause of action occurred, at least in part, within the state of Missouri and within this District.

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

3

Case 4:19-cv-01027-RK *SEALED*   Document 1 *SEALED*   Filed 12/26/19   Page 3 of 22
Case 4:19-cv-01027-SRB   Document 13   Filed 05/01/20   Page 3 of 22

14. This Court has personal jurisdiction over EAN pursuant to 31 U.S.C. § 3732(a) because EAN operates vehicle rental centers throughout Missouri and this District, and therefore, transacts business in this District. The Court also has personal jurisdiction over EAN pursuant to 31 U.S.C. § 3732(a) because its violations of the FCA occurred in this District.

15. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because the state law claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

16. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) because EAN transacts business in this District by supplying rental vehicles for use by GSA employees and agents.

17. At all relevant times, EAN conducted substantial business within this District and maintained employees and offices in this District and throughout Missouri.

## Factual Allegations

### The False Claims Act

18. The False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, is the primary tool with which the United States combats false and fraudulent claims brought against it.

19. The FCA provides that a person is liable to the United States for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. §§ 3729(a)(1)(A) and (B).

4

Case 4:19-cv-01027-RK *SEALED* Document 1 *SEALED* Filed 12/26/19 Page 4 of 22
Case 4:19-cv-01027-SRB Document 13 Filed 05/01/20 Page 4 of 22

20. The FCA defines "knowingly" to mean that a person: "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

21. The FCA provides that no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

22. The FCA provides that if a person or entity is liable to the United States under the FCA, the person or entity shall pay a "civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [], plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1).

23. The FCA states that "[i]f the Government proceeds with an action brought by a person under subsection (b), such person shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim." 31 U.S.C. § 3730(d)(1).

24. The FCA provides that "[i]f the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall not be less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds." 31 U.S.C. § 3730(d)(2).

25. The FCA also allows for recovery of reasonable expenses, attorney's fees, and costs. 31 U.S.C. § 3730(d).

5

**The Contract**

26.     On April 25, 2006, GSA and EAN entered into the vehicle rental Contract. The Contract was extended through June 20, 2017, and the Contract was extended again and is currently in effect.

27.     The Contract provides that compliance with all terms of the Contract are conditions of payment. Specifically, the Contract provides, "[t]he ordering activity may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions . . ." Contract at p. 23 (52.212-4 Contract Terms and Conditions).

**The GSA Multiple Award Schedule ("MAS")**

28.     Executive agencies of the United States may procure products and services only through full and open competition, unless they meet certain exceptions. 41 U.S.C. § 3301(a) and (c).

29.     The competitive bidding process, and the negotiation of contractual terms, is a lengthy and costly process. In order to expedite the procurement process for executive agencies and contractors wishing to sell products to executive agencies, GSA -- through the Federal Acquisition Service -- solicits, negotiates, awards, and administers Multiple Award Schedule ("MAS") contracts to procure products and services for federal agencies. 40 U.S.C. § 501(b); 48 C.F.R. § 8.402.

30.     Under the MAS program, GSA negotiates the prices and other contract terms that will apply to subsequent orders placed for all of the items that are covered by the MAS contract. Once those prices are set, agencies can make purchases at those prices, or at even better prices,

6

subject to the contract terms. The list of products or services that are available for purchase under a particular MAS contract is referred to as the contract schedule.

31. The pre-negotiation of the terms of sale for a large number of products and services under the MAS program saves significant administrative costs for Government agencies ordering off of MAS contract schedules and for contractors wishing to sell products to the Government.

32. The Competition in Contracting Act requires that "(3) the procedures established by the Administrator of General Services for the multiple awards schedule program of the General Services Administration if-

(A) participation in the program has been open to all responsible sources; and

(B) orders and contracts under those procedures result in the lowest overall cost alternative to meet the needs of the Government;

41 U.S.C. § 259(b)(3). These requirements ensure that MAS users receive the contractors' best prices.

33. The Administrator of GSA establishes the procedures that govern the MAS program, including the requirements that contractors must follow in order to participate in the program. 40 U.S.C. §§ 121(c), 501(b)(2).

34. GSA initiates the MAS process by publishing a contract solicitation. Interested contractors then submit responses to the solicitation to GSA. Any contractor that enters into an MAS contract with the United States must abide by: (1) the obligations that are outlined in the Government's solicitation; (2) clauses that are incorporated into the contract; and (3) any other general federal contracting requirements set forth in the applicable regulations.

35. The MAS contract solicitation requires prospective contractors to provide GSA with extensive information about their commercial sales and practices, including prices and

7

discounts - both standard and nonstandard - offered by the contractor to commercial customers. This information is provided in a "Commercial Sales Practice Format" or CSP. 48 C.F.R. § 515.408.

36. GSA requires offerors to provide pricing information that is current, accurate, and complete. The information contained in the CSP is material to a GSA Contracting Officer's decision to award a MAS contract. GSA Contracting Officers rely on the accuracy, truthfulness, and completeness of the information provided by the offeror regarding its commercial sales and discount practices in negotiating the terms of a MAS contract.

37. Pursuant to 48 C.F.R. § 538.270, GSA Contracting Officers are required to "seek to obtain the offeror's best price (the best price given to the most favored customer)." 48 C.F.R. § 538.270. In negotiating the terms of an MAS contract, the contracting officer must determine whether the price offered to GSA is reasonable by "compar[ing] the terms and conditions of the [offeror's response to the] MAS solicitation with the terms and conditions of agreements with the offeror's commercial customers." *Id.*

38. MAS contracts provide that if, subsequent to formation of the contract, GSA discovers that the prices in a contract or modification were inflated due to the contractor's failure to provide current, accurate, and complete information, or to update that information, the Government is entitled to a reduction in the price of each order issued pursuant to the MAS contract. 48 C.F.R. § 552.215-72.

39. The regulations governing MAS contracts include a mechanism that is known as the "Price Reductions Clause." 48 C.F.R. § 552.238-75.

40. The Price Reductions clause in the Contract at issue here states, "[f]or the purposes of the price reduction clause, the Most Favored Customer (MFC) designated for SIN 411-2 is

8

████████████████████████████████████

. Since the MFC will be a government entity, . . .

subparagraph (d)(2) is struck out . . .". Accordingly, the Price Reductions clause reads as follows:

(a) Before award of a contract, the Contracting Officer and the Offeror will agree upon (1) the customer (or category of customers) which will be the basis of award, and (2) the Government's price or discount relationship to the identified customer (or category of customers). This relationship shall be maintained throughout the contract period. Any change in the Contractor's commercial pricing or discount arrangement applicable to the identified customer (or category of customers) which disturbs this relationship shall constitute a price reduction.

(b) **During the contract period, the Contractor shall report to the Contracting Officer all price reductions to the customer (or category of customers) that was the basis of award.** The Contractor's report shall include an explanation of the conditions under which the reductions were made.

(c)(1) **A price reduction shall apply to purchases under this contract if, after the date negotiations conclude, the Contractor-**

(i) Revises the commercial catalog, pricelist, schedule or other document upon which contract award was predicated to reduce prices;

(ii) **Grants more favorable discounts or terms and conditions than those contained in the commercial catalog, pricelist, schedule or other documents upon which contract award was predicated**; or

(iii) **Grants special discounts to the customer (or category of customers) that formed the basis of award, and the change disturbs the price/discount relationship of the Government to the customer (or category of customers) that was the basis of award.**

(2) **The Contractor shall offer the price reduction to the Government with the same effective date, and for the same time period, as extended to the commercial customer (or category of customers).**

(d) There shall be no price reduction for sales:

(1) To commercial customers under firm, fixed-price definite quantity contracts with specified delivery in excess of the maximum order threshold specified in this contract;

(2) To Federal agencies;

9

(3) Made to Eligible Ordering Activities identified in GSAR Clause 552.238-78 when the order is placed under this contract (and the Eligible Ordering Activities identified in GSAR Clause 552.238-78 is the agreed upon customer or category of customer that is the basis of award); or

(4) Caused by an error in quotation or billing, provided adequate documentation is furnished by the Contractor to the Contracting Officer.

(e) The Contractor may offer the Contracting Officer a voluntary Governmentwide price reduction at any time during the contract period.

(f) **The Contractor shall notify the Contracting Officer of any price reduction subject to this clause as soon as possible, but not later than 15 calendar days after its effective date.**

(g) The contract will be modified to reflect any price reduction which becomes applicable in accordance with this clause.

*See* Contract at pp. 125-26 (552.238-75 Price Reductions clause) (emphasis added).

41.    The Contract was signed by ███████ ██ ██████ █.

42.    Before awarding a contract, the contracting officer and potential contractor must determine what category of customer will be the basis for the award. *See* 48 C.F.R. § 552.238-75(a).

43.    The Contract provides the basis of award for application and consideration by the Price Reductions clause is ████████████████████████████████████████

████████.

44.    During the life of the contract, the contractor must submit to the contracting officer all price reductions that were offered to the category of customers that make up the basis of the award; in this case, ███████ *See* 48 C.F.R. § 538.238-75(b). If a lower price is offered, the contractor must also apply a price reduction to the GSA contract.

45.    In addition to the requirement that the Contractor inform the Government of any changes in the price, discounts, or other terms offered to the Basis of Award customer, the Price

10

Reductions clause requires the Contractor to report any changes in the commercial catalog, pricelist, schedule, or other documents upon which the contract was awarded. *See* Price Reductions clause and 48 C.F.R. § 552.238-75 ("the contractor [sic] will be modified to reflect any price reduction which becomes applicable in accordance with this clause"). These changes must be reported to GSA as soon as possible, but not later than fifteen (15) calendar days after the effective date of the change. Price Reductions clause and 48 C.F.R. § 552.238-75(f).

46.     Therefore, under the MAS regulations, EAN was required to provide GSA with the same pricing and discounts offered to ████, the basis of award customer, and the other entities identified in the Audit that received more favorable pricing.

**Discovery of False Claims Submitted by EAN**

47.     On April 6, 2016, EAN submitted Commercial Sales Practices ("CSP") data. EAN provided a revised CSP on July 22, 2016. The CSP data contained standard vehicle rental pricing and surcharge areas comparing ████ pricing, as the basis of the award, with GSA's pricing.

48.     This CSP data was the subject of an audit performed by the Inspector General ("the Audit"). *See* Audit (Pre-award Examination of Multiple Award Schedule Contract Extension, EAN Holdings, LLC; Contract Number GS-33F-0015S; Report Number A150111/Q/6/X17017).

49.     The Audit was performed by the Office of Inspector General's Heartland Region Audit Office (JA-6) located at 2300 Main Street, 3 NW Suite 417, Kansas City, MO, 64108.

50.     The Audit examined data from March 30, 2015 through September 30, 2015.

51.     The Audit concluded as follows:

- Finding 1: ████████████████████████ ████████.
- Finding 2: ████████████████████████ ████████████

11

Case 4:19-cv-01027-RK *SEALED*   Document 1 *SEALED*   Filed 12/26/19   Page 11 of 22
Case 4:19-cv-01027-SRB   Document 13   Filed 05/01/20   Page 11 of 22

- Finding 3: █████ ██████ ████ ████ ██████

Audit (emphasis added).

52.     After the Audit findings were provided to GSA and EAN, GSA negotiated limited reductions in pricing as a result of the Audit's findings. However, GSA is still owed for overpayments as a result of EAN's failure to comply with the Price Reductions clause.

53.     EAN failed to fully disclose its discounting practices and policies during the life of the Contract and the negotiations during the Contract extension in 2017.

54.     EAN continued to mislead GSA during the life of the Contract and the negotiations during the Contract extension in 2017.

55.     ████████ ████████ ████ ██ ██████████ Audit at Appendix B, pg. B-1.

56.     For instance, as determined in the Audit, the CSP provides the best rate for an economy vehicle is ████ per day; however, the GSA was charged $41.11 per day for the same type of vehicle. The CSP provides the best rate for a compact car is ████ per day; however, GSA was $42.28 per day. The CSP rate for a standard vehicle was ████, but GSA's rate was $45.81 per day. The CSP rate for a luxury vehicle rental is ████ per day; however, the GSA rate for the same vehicle is almost double the CSP rate at $80.20 per day. GSA was charged more than other entities identified in the CSP in all eighteen vehicle types EAN offers for rent.

57.     The Audit reviewed contract and sales data and determined that a federal agency

████████████████████████████████████████████████████████

---

[2]     The Audit said that EAN provided no description ████ ██ ████ or the nature of its business.

Case 4:19-cv-01027-RK *SEALED*   Document 1 *SEALED*   Filed 12/26/19   Page 12 of 22
Case 4:19-cv-01027-SRB   Document 13   Filed 05/01/20   Page 12 of 22

 *See* Audit,

Appendix B at B-1.



Case 4:19-cv-01027-RK *SEALED*   Document 1 *SEALED*   Filed 12/26/19   Page 13 of 22
Case 4:19-cv-01027-SRB   Document 13   Filed 05/01/20   Page 13 of 22

61.    EAN's sales data received from the Audit showed that ████████ ████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

64.    EAN's CSPs are not accurate or complete because they does not disclose EAN's

most favorable non-GSA rates as required by the Contract.

65.    Taking into consideration the Contract and GSA sales, the United States ████████

████████ ████ █ ██ ████████████████████ ██ ████ ██ ██

66.    After the Audit was completed, ████████████ ██ ████████ ██ ████████

████████ ████████████ ████████ █ ████ ██ ████████

████████ █ ████ ██

14

Case 4:19-cv-01027-RK *SEALED*   Document 1 *SEALED*    Filed 12/26/19   Page 14 of 22
Case 4:19-cv-01027-SRB    Document 13    Filed 05/01/20    Page 14 of 22

## COUNT I
## VIOLATION OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(A)
## (KNOWINGLY PRESENTING A FALSE CLAIM FOR PAYMENT)

67. Relator incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

68. By virtue of the acts described above and either with actual knowledge, deliberate ignorance, or reckless disregard of the truth, EAN presented or caused to be presented false claims to the United States for payment in violation of 31 U.S.C. § 3729(a)(1)(A). The false claims and omissions of material fact were material to GSA's payment decision because they had the natural tendency to induce the United States in making payments.

69. In accordance with the Price Reductions clause of the Contract, EAN was contractually required to monitor its compliance with the Price Reductions clause and notify GSA of any price reductions offered. In addition to any notification of price reductions, the Price Reductions clause requires EAN to notify GSA of the nature and conditions of price reductions offered as well as offer those price reductions to GSA with the same effective date and for the same time period as provided for the commercial customer.

70. In violation of 31 U.S.C. § 3729(a)(1) and 31 U.S.C. § 3729(a)(1)(A), EAN knowingly presented, or caused to be presented, for payment or approval, false and/or fraudulent claims (i.e., invoices for payment for use of EAN rental vehicles under the Contract) to the United States, which the United States paid.

71. The invoices submitted by EAN to GSA under the Contract were claims for payment as defined in the FCA statutes. 31 U.S.C. § 3729(b)(2) defines "claim" as, "any request or demand, whether under a contract or otherwise, for money or property . . . that . . . is presented to an officer, employee, or agent of the United States." The invoices submitted by EAN were

15

claims for payment because they sought monetary payment from the United States for the use of EAN's rental vehicles.

72.    The invoices submitted by EAN were false and did not comply with the Contract provisions. The Audit performed by the Inspector General concluded that ████ ████████

████████ ████████████ ██ ██████ ████████ ██ ████████████████

████ ████████ ██ ████████████ ████ ██ ██████ ██████ █ ██ ████

████ ██ ████ ██████ █████████████████ ████ ████████ ██▌████

████████ ████ ████ Therefore, the claims for payment submitted by EAN contained inaccurate pricing and falsely certified that EAN complied with the Contract and applicable regulations.

73.    The FCA imputes liability if a person or persons "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). The FCA statute defines a person to act "knowingly" if they have "actual knowledge of the information," "act[] in deliberate ignorance of the truth or falsity of the information," or "act[] in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

74.    The FCA does not require proof of a specific intent to defraud. 31 U.S.C. § 3729(b)(1)(B).

75.    EAN knowingly submitted a false claim for payment. EAN has knowledge of the prices and contracts it has with other entities. There is a specific group at EAN that reports the pricing information to GSA. The information in the Contract, including price comparisons, is gathered, consolidated, and reported by EAN's high level employees in the corporate office. Therefore, by continuing to submit invoices to GSA and without any notification to the contrary,

Case 4:19-cv-01027-RK *SEALED*   Document 1 *SEALED*   Filed 12/26/19   Page 16 of 22
Case 4:19-cv-01027-SRB   Document 13   Filed 05/01/20   Page 16 of 22

EAN represented that it was monitoring prices and complying with the Price Reductions clause as well as other Contract terms. This representation was false because EAN had not complied with the Price Reductions clause as EAN did not notify or offer to GSA the lower prices it provided to other entities, including ▮▮▮▮▮.

76.　Even if EAN asserts that it did not have actual knowledge of the presentment of the false claims, EAN was deliberately ignorant to the truth or falsity of its claims for payment to GSA. At all relevant times, EAN was in possession of the contracts and pricing agreements it had made with other entities; therefore, to avoid learning that GSA was offered less favorable pricing than other entities, EAN would have had to deliberately ignore and avoid reviewing GSA's contract in comparison with all other contracts it has. This is highly unlikely as EAN's corporate office was responsible for gathering this pricing data and submitting reports to GSA comparing the GSA rate to rates offered to other entities. Therefore, to avoid learning the price differentials, EAN would have to deliberately avoid reviewing its own sales contracts in general and when submitting reports to GSA. At the very least, EAN acted with deliberate ignorance to avoid knowing it submitted false claims to GSA.

77.　Even if EAN asserts it did not have knowledge and did not act with deliberate ignorance to learn the claims were false, EAN, at minimum, acted with reckless disregard by failing to determine the truth or falsity of its claims submitted to GSA. EAN was in possession of the contracts it is involved with; therefore, EAN acted with reckless disregard in failing to compare contract pricing to remain in compliance with the Price Reductions clause. This is especially true because the Contract required EAN to gather, consolidate, and submit reports to GSA concerning the pricing offered to GSA compared with other entities.

17

78. The knowledge requirement is also independently satisfied because EAN's submission of invoices to GSA were implied certifications that EAN complied with the Contract and all applicable clauses.[3] Here, compliance with the Price Reductions clause was a condition of payment in the Contract.

79. The false claims and omissions were material to GSA's payment decision because had the United States known of the incorrect payment amounts, this would have the natural tendency to induce the United States to pay less for the same services.

80. Pursuant to 31 U.S.C. § 3729(a), EAN is liable to the Government for a civil penalty of not less than \$5,500 and not more than \$11,000 for each violation of the False Claims Act committed by EAN.

81. Pursuant to 31 U.S.C. § 3729(a), EAN is liable to the Government for three times the amount of all damages sustained by the United States because of EAN's conduct.

82. Pursuant to 31 U.S.C. § 3730(d), Relator seeks a share of the recovery by the United States in an amount prescribed in §§ 3730(d)(1) or (d)(2).

## COUNT II
## VIOLATION OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(B) (KNOWINGLY CREATING FALSE RECORDS)

83. Relator incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

84. In violation of 31 U.S.C. § 3729(a)(1)(B), EAN knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim. The false

---

[3] *See Universal Health Services, Inc. v. United States and Massachusetts, ex rel. Julio Escobar and Carmen Correa*, 136 S. Ct. 1989, (2016) ("[t]he implied false certification theory can be a basis for FCA liability when a defendant submitting a claim makes specific representations about the goods or services provided, but fails to disclose noncompliance with material statutory, regulatory, or contractual requirements that make those representations misleading with respect to those goods or services").

18

Case 4:19-cv-01027-RK *SEALED*   Document 1 *SEALED*   Filed 12/26/19   Page 18 of 22
Case 4:19-cv-01027-SRB   Document 13   Filed 05/01/20   Page 18 of 22

claims and omissions were material to GSA's payment decision because had the United States known of the incorrect payment amounts, this would have the natural tendency to induce the United States to pay less for the same services.

85.    EAN knowingly and deliberately failed to inform GSA that ▮▮▮, the basis of award, received more favorable pricing than GSA. EAN also failed to offer to GSA the lower prices that were offered to other entities.

86.    As discussed in detail above, EAN knowingly submitted CSP's to GSA that did not identify the best rates offered. EAN failed to offer the lower prices provided to ▮▮▮ to GSA. Further, the CSP's provided to GSA did not identify the rates offered to ▮▮▮▮▮ ▮▮▮▮, ▮▮▮▮▮▮s, and▮▮ ▮▮▮▮▮▮ ▮▮▮▮, which all have more favorable rates than GSA for the same products. For example, rentals of 10-15' passenger vans represented twenty-five percent (25%) of the total GSA sales for our examination period. EAN's CSP disclosed its best rate for these vehicles as ▮▮▮ to ▮▮▮ per day; however, the sales data indicated that ▮▮▮▮▮▮ ▮▮▮▮▮ was provided an average rate of ▮▮▮ per day for the same vehicle.

87.    For the eight vehicle types that represented 91.5% of GSA sales for the Audit examination period, EAN granted rates ranging from ▮▮▮▮▮ lower than those disclosed in EAN's CSP.

88.    The claims EAN submitted for payment were false because they did not comply with the Price Reductions clause.

89.    The United States paid the false claims as a result of EAN's claims for payment.

90.    The United States incurred damages because the claims the United States paid were too high.

19

91.     Pursuant to 31 U.S.C. § 3729(a), EAN is liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each violation of the False Claims Act committed by EAN.

92.     Pursuant to 31 U.S.C. § 3729(a), EAN is liable to the Government for three times the amount of all damages sustained by the United States because of EAN's conduct.

93.     Pursuant to 31 U.S.C. § 3730(d), Relator seeks a share of the recovery by the United States in an amount prescribed in §§ 3730(d)(1) or (d)(2).

## COUNT III
### PAYMENT BY MISTAKE

94.     Relator incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

95.     This is a claim by the United States for the recovery of monies paid to EAN for false claims submitted to GSA.

96.     As a consequence of the conduct and the acts above, EAN was paid too much for services provided, which, under the circumstances, in good equity and conscience, should be returned to the United States.

## COUNT IV
### BREACH OF CONTRACT

97.     Plaintiff incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

98.     EAN and GSA entered into a valid and binding contract, as set forth in the paragraphs above.

99.     EAN had a duty to comply with the Contract; however, EAN materially breached the Contract.

100. EAN materially breached the Contract by failing to monitor and comply with the Price Reductions clause, failing to notify GSA of price decreases, and failing to offer those price decreases to GSA.

101. As a direct and proximate result of EAN's breach of the Contract, the United States has suffered injuries in an amount to be determined at trial.

### COUNT V
### UNJUST ENRICHMENT

102. Relator incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

103. As a result of the conduct of EAN, EAN has been unjustly enriched at the expense of the United States.

104. Specifically, EAN has submitted falsely inflated claims for payment to the United States, and as a result of payment of payment of those claims, the United States has paid more than it should have pursuant to the Contract.

105. EAN should be required to disgorge its unjust enrichment by the Court's power of equity.

106. Relator asserts that the United States is entitled to equitable restitution of sums improperly paid by the United States as a result of EAN's false claims for payment in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of himself and the United States, prays for judgment against EAN as follows:

1. On Counts I and II, pursuant to the False Claims Act, for judgment against EAN for: (i) statutory damages in an amount to be determined at trial, trebled as required

21

by law, and such penalties as required by law, and (ii) the costs of this action, plus interest, as provided by law;

2.      On Count III, Payment by Mistake, for: (i) an amount equal to the money paid by the United States to EAN, and illegally retained by EAN, plus interest, and (ii) the costs of this action, plus interest, as provided by law;

3.      On Count IV, Breach of Contract, for judgment against EAN in an amount to be determined at trial;

4.      On Count V, Unjust Enrichment, for judgment against EAN in an amount to be determined at trial;

5.      Award Relator a percentage of the proceeds of recoveries for prosecuting this action as provided in 31 U.S.C. § 3730(d); and

6.      Award Relator his costs and reasonable attorney's fees for prosecuting this action.

## JURY TRIAL DEMAND

Relator, on behalf of himself and the United States, demands a trial by jury as to all issues so triable.

DATED: December 26, 2019          Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

       */s/ Matthew L. Dameron*
Matthew L. Dameron (MO Bar No. 52093)
Courtney Stout (MO Bar No. 70375)
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:    (816) 945-7110
Fax:    (816) 945-7118
matt@williamsdirks.com
cstout@williamsdirks.com

***Counsel for Plaintiff/Relator John Walsh***